**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NORTH DAKOTA**

| | |
|---|---|
| In Re: | Bankruptcy No. 20-30513 |
| John Richard Carlson, | Chapter 7 |
| Debtor. | |
| Lawrence J. and Darla Ward, | |
| Plaintiffs, | |
| vs. | Adversary No. 20-7032 |
| John Richard Carlson, | |
| Defendant. | |

**MEMORANDUM AND ORDER**

Plaintiffs Lawrence and Darla Ward filed a Complaint on December 22, 2020, alleging Debtor/Defendant John Richard Carlson violated state and federal securities laws; committed common law fraud, deceit or manipulation; breached a fiduciary duty; and committed actual fraud/false pretense. The Wards seek a determination that the debt he owes them for these violations is excepted from discharge under 11 U.S.C. § 523(a)(2)(A), (a)(4) and (a)(19). Debtor filed an Answer on August 26, 2021, denying these allegations.

The Wards filed a Motion for Partial Summary Judgment on March 11, 2022. They assert that the undisputed facts of the case demonstrate that they are entitled to judgment on their claim under section 523(a)(19). Debtor filed a response on March 28, 2022, resisting the motion for partial summary judgment and arguing that the undisputed

1

facts do not establish the elements of section 523(a)(19). The Wards filed a reply in support of their motion on April 11, 2022. The Court held a hearing on the motion on May 5, 2022. For the reasons that follow, the Wards' Motion for Partial Summary Judgment is GRANTED IN PART and DENIED IN PART.

## I.   SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when there is no genuine dispute regarding any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Bankr. P. 7056; Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The party seeking summary judgment bears the initial burden of identifying pleadings, discovery, testimony and other evidence which it believes demonstrate "the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323. When the moving party meets its burden, the nonmoving party must then "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324 (citing Fed. R. Civ. P. 56). The Court views the record in the light most favorable to the nonmoving party and affords that party all reasonable inferences. Blocker v. Patch (In re Patch), 526 F.3d 1176, 1180 (8th Cir. 2008) (citing Liberty Lobby, 477 U.S. at 252; Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986)).

## II.   UNDISPUTED FACTS

In their Complaint filed in this adversary proceeding, the Wards allege that they invested $395,000 "in a series of high-risk, illiquid limited partnerships and real estate investment trusts" based on the advice of their financial planner/investment advisor,

2

Steven Knuttila.  Doc. 1 at 3.  Capital Financial Services (CFS) employed Knuttila at the time he provided advice to the Wards.  Id.  Debtor served as President and Chief Compliance Officer of CFS "during the time period at issue in this Complaint."  Id. at 4.

In early 2019, the Wards initiated an arbitration proceeding against Debtor, Knuttila, CFS and others with Financial Industry Regulatory Authority (FINRA) Dispute Resolution Services.  The parties presented their claims and defenses to an arbitration panel appointed to hear the dispute between May 2019 and September 2020.  Debtor filed a voluntary Chapter 7 bankruptcy petition on September 25, 2020, shortly before the scheduled arbitration hearing.

The Wards filed a motion seeking relief from the automatic stay to proceed with the arbitration on November 5, 2020.  Debtor opposed the motion.  The Court held a preliminary hearing on December 1, 2020, and allowed the parties to submit evidence prior to the final hearing.  After a final hearing on December 21, 2020, the Court granted the Wards relief from the stay to pursue the FINRA litigation and arbitration but did not grant relief to pursue any judgment, execution or any acts related to collection of any liability determined through the arbitration proceedings.

After considering the pleadings, testimony and evidence presented at the arbitration hearing, the arbitration panel found for the Wards and awarded them compensatory and punitive damages and attorney fees on August 4, 2021.  It also assessed various fees against Carlson and the other respondents.  In the award, the panel listed the causes of action asserted by the Wards, which included violations of federal securities laws, the Minnesota Securities Act, Minnesota Prevention of Consumer Fraud Act, Minnesota Act Preventing Deceptive Acts Against Senior Citizens, Minnesota

Uniform Fraudulent Transfer Act and FINRA rules; negligent hiring/supervision; and breach of fiduciary duty. The panel explained that the causes of action related to the Wards' allegation that they were urged to invest all of the proceeds from the sale of their home in an annuity and several high-risk, illiquid limited partnerships and real estate investment trusts. The panel recited the procedural history of the arbitration case, but made no express factual findings before awarding, in relevant part:

1. CFS, Carlson, and Knuttila are jointly and severally liable for and shall pay to [the Wards] the sum of $275,000.00 in compensatory damages.

2. CFS, Carlson, and Knuttila are jointly and severally liable for and shall pay to [the Wards] interest on the above-stated sum in accordance with Minn. Stat. § 549.09 through and including the date the award is paid in full.

3. CFS, Carlson, and Knuttila are jointly and severally liable for and shall pay to [the Wards] the sum of $150,000.00 in punitive damages pursuant to Minn. Stat. § 549.20. The Panel finds that there is clear and convincing evidence that the actions of CFS, Carlson, and Knuttila showed deliberate disregard for [the Wards'] economic safety.

4. CRS, Carlson, and Knuttila are jointly and severally liable for and shall pay to [the Wards] the sum of $100,000.00 in attorneys' fees pursuant to Minn. Stat. § 8.31 subd. 3a; and Minn. Stat. § 325F.71.

* * *

6. CFS, Carlson, and Knuttila are jointly and severally liable for and shall pay to [the Wards] the sum of $300.00 in costs as reimbursement for the non-refundable portion of the filing fee paid to FINRA Dispute Resolution Services.

7. Carlson's request for expungement of the above-captioned arbitration from his registration records maintained by the CRD is denied.

The Wards filed a motion to confirm the arbitration award with a Minnesota state court. After a hearing on September 24, 2021, the court confirmed the arbitration award "in all respects" and found Debtor and other respondents jointly and severally liable for

4

the damages and fees assessed.

In their Complaint, the Wards allege Debtor participated in and is directly liable for Knutilla's fraud because "(i) [Debtor] hired Knuttila despite his horrendous compliance record, expecting that Knuttila would continue his fraudulent activities; (ii) [Debtor] encouraged Knuttila to sell large quantities of high-risk illiquid alternative investments to elderly investors because of the high revenues that were generated; (iii) [Debtor] allowed (and encouraged) Knuttila to continue his fraudulent activities even after CFS became aware of new customer complaints following CFS's hiring of Knuttila; (iv) [Debtor] appointed Knuttila's assistant to supervise him; and (v) [Debtor] ignored the warnings of his Compliance Department that Knuttila's conduct was inappropriate and harming investors." Id. at 8-9.  The Wards maintain that this conduct warrants denial of Debtor's discharge under section 523(a)(2)(A), (4) and (19).  In their Motion for Partial Summary Judgment, they seek judgment as a matter of law only on their cause of action under section 523(a)(19).

## III.   ANALYSIS

Section 523(a)(19) provides that a discharge under section 727 does not discharge an individual debtor from a debt:

(19) that–

    (A) is for–

        (i)    the violation of any of the Federal securities laws (as that term is defined in section 3(a)(47) of the Securities Exchange Act of 1934), any of the State securities laws, or any regulation or order issued under such Federal or State securities laws; or

        (ii)    common law fraud, deceit, or manipulation in connection with the purchase or sale of any security;

5

     and

  (B) results, before, on, or after the date on which the petition was filed, from–

    (i) any judgment, order, consent order, or decree entered in any Federal or State judicial or administrative proceeding;

    (ii) any settlement agreement entered into by the debtor; or

    (iii) any court or administrative order for any damages, fine, penalty, citation, restitutionary payment, disgorgement payment, attorney fee, cost, or other payment owed by the debtor.

11 U.S.C. § 523(a)(19). Courts construe exceptions to discharge under section 523(a) narrowly. See U.S. Dep't of Labor v. Harris (In re Harris), 898 F.3d 834, 842 (8th Cir. 2018) (citing Reshetar Sys., Inc. v. Thompson (In re Thompson), 686 F.3d 940, 944 (8th Cir. 2012) ("We construe these exceptions [under section 523(a)] narrowly, imposing the burden of proof on the creditor opposing discharge.")); Cmty. Fin. Grp., Inc. v. Fields (In re Fields), 510 B.R. 227, 233 (B.A.P. 8th Cir. 2014) (exceptions to discharge under section 523(a) are narrowly construed against a creditor and liberally construed against a debtor to effectuate the fresh start policy of the Bankruptcy Code).

  For a debt to be nondischargeable under section 523(a)(19), "an objecting creditor must prove that: '(1) the debt is for violation of securities laws or for common law fraud in connection with the sale of a security; and (2) the debt must be memorialized in a judicial or administrative order, or in a settlement agreement.'" Jenkins v. Jones (In re Jones), 600 B.R. 561, 568 (Bankr. W.D. Tex. 2019) (quoting Wright v. Minardi (In re Minardi), 536 B.R. 171, 191 (Bankr. E.D. Tex. 2015). The burden is on the creditor to show a debt is excepted from discharge under section

523(a). Grogan v. Garner, 498 U.S. 279, 283 (1991).

The Wards offered evidence showing a Minnesota state court memorialized Debtor's debt to the Wards when it confirmed the arbitration award comprising the debt, satisfying the second requirement. The more difficult question is whether the debt is for a violation of securities laws or common law fraud in connection with the sale of a security.

Debtor, who appeared pro se at the summary judgment hearing, asserts that the arbitration panel did not expressly find fraud or a violation of securities laws. The Wards disagree, arguing that the arbitration award was based, at least in part, on the violation of securities laws, fraud, deceit, or manipulation in connection with the purchase or sale of any security. In support of this argument, the Wards direct the Court to the section of the award in which the panel found Debtor liable for attorney fees and punitive damages and suggest the Court may properly infer that the panel found Debtor liable for securities violations or fraud. At the summary judgment hearing, Debtor asserted that attorney fees may be awarded for "any reason or no reason whatsoever," and the award does not include language providing that attorney fees or punitive damages were based on any specific violation.

While it is true that the arbitration panel included virtually no analysis of the claims and defenses, it specifically found Debtor jointly and severally liable for attorney fees "pursuant to Minn. Stat. § 8.31 subd. 3a; and Minn. Stat. § 325F.71." Doc. 28-5 at 6. Section 8.31 provides that a private person may recover damages, including attorney fees, for injuries resulting from specific acts, including:

> violations of the law of this state respecting unfair, discriminatory, and other unlawful practices in business, commerce, or trade, and specifically, but not

7

> exclusively, the Nonprofit Corporation Act (sections 317A.001 to 317A.909), the Act Against Unfair Discrimination and Competition (sections 325D.01 to 325D.07), the Unlawful Trade Practices Act (sections 325D.09 to 325D.16), the Antitrust Act (sections 325D.49 to 325D.66), section 325F.67 and other laws against false or fraudulent advertising, the antidiscrimination acts contained in section 325D.67, the act against monopolization of food products (section 325D.68), the act regulating telephone advertising services (section 325E.39), the Prevention of Consumer Fraud Act (sections 325F.68 to 325F.70), and chapter 53A regulating currency exchanges[.]

Minn. Stat. § 8.31 subd. 3a. Although this statute references violations not at issue in this case, the arbitration panel's citation to section 325F.71 provides the necessary "hook" to a consumer fraud violation. More specifically, section 325F.71 authorizes additional civil penalties for deceptive acts against senior citizens. Under section 325F.71, a person who violates "sections 325D.43 to 325D.48, regarding deceptive trade practices; 325F.67, regarding false advertising; and 325F.68 to 325F.70, regarding consumer fraud" against a senior citizen or disabled person is liable for an additional civil penalty not to exceed $10,000 for each violation. Minn. Stat. § 325.F71. Of the enumerated statutes in section 325F.71, only the consumer fraud sections are implicated in this case and provide a possible basis for the arbitration panel's citation. Because the arbitration panel found a violation triggering the application of section 325F.71 and justifying attorney fees, and because the consumer fraud sections under sections 325F.68 to 325F.70 are the only statutes listed in both sections 8.31 and 325.71 that are implicated in this case, the Court concludes that the arbitration panel awarded attorney fees for a violation of Minnesota state consumer fraud laws.

In response to the Wards' argument that the arbitration panel found Debtor liable for consumer fraud, Debtor argued it was impossible for him to have committed fraud against the Wards because there is no evidence that he ever communicated with or

8

contacted them. Specifically, he asserts he did not make any statements to the Wards that were false that they used in their investment decision, and common sense and logic lead to the conclusion that he could not have committed fraud. Debtor claimed the factual underpinnings to his assertions "didn't come up" during the arbitration, and he essentially disagrees with the correctness of the arbitration panel decision and state court order confirming it.

Despite Debtor's invitation to the Court to "stand up and do the right thing," preclusion doctrines bar this Court from relitigating the issues decided by the arbitration panel and confirmed by a state district court. See Portal Investments, LLC v. Johnson (In re Johnson), 584 B.R. 895, 899-905 (Bankr. D. N.D. 2018). Debtor was a party to the arbitration proceedings and acknowledged he received notice of the Wards' motion to confirm the award. He contested the merits of the consumer fraud and other claims before the arbitration panel and received a full and fair opportunity to litigate the attorney fee assessment and underlying consumer fraud claims before both the arbitration panel and the state court that confirmed the panel's award. The award and confirmation order are final, and the attorney fee determination was essential to the prior award and judgment. Accordingly, collateral estoppel bars the Court from relitigating whether the arbitration panel properly found Debtor liable for attorney fees assessed pursuant to Minn. Stat. §§ 8.31 subd. 3a and 325F.71. See Johnson, 584 B.R. at 899-905.

Since the Court finds that the arbitration panel assessed attorney fees based on a consumer fraud violation in connection with the sale of securities, the $100,000 attorney fee falls within the scope of section 523(a)(19). This debt is excepted from

9

discharge under this section. The Wards' Motion for Partial Summary Judgment is granted, in part, based on this conclusion.

The Wards also argue that the arbitration panel's punitive damages award constitutes a finding of securities law violations or common law fraud or deceit. The Wards assert that punitive damages must be based on the commission of an intentional tort, emphasize that their claims included securities violations and consumer fraud (which are intentional torts), and assert that the panel found securities law violations and consumer fraud. With this argument, the Wards ignore their claim that Debtor breached a fiduciary duty, which is also an intentional tort. The arbitration panel only cited section 549.20, the punitive damages statute, as the basis for punitive damages. Section 549.20 requires that punitive damages are "allowed in civil actions only upon clear and convincing evidence that the acts of the defendant show deliberate disregard for the rights or safety of others." Minn. Stat. § 549.20. While the panel found clear and convincing evidence that Debtor's actions showed deliberate disregard for the Wards' economic safety, it did not articulate the context or specify the underlying cause(s) of action related to the intentional acts. It is possible the panel awarded punitive damages for Debtor's breach of fiduciary duty, which would not satisfy section 523(a)(19). Granting all inferences in favor of the nonmovant, the Court is compelled to reject the Wards' claim that the panel found Debtor liable for punitive damages based on securities violations or consumer fraud.

The same holds true for the arbitration panel's assessment of compensatory damages, sanctions, costs and fees. Several of the Wards' claims—that the arbitration panel listed and reportedly considered—fall outside the scope of section 523(a)(19),

and the panel provided no analysis or conclusions linking those claims falling within the scope of section 523(a)(19) to its award. Given that the Court must construe all inferences in favor of the nonmovant and that courts construe section 523(a) in favor of debtors, the Court is not inclined to grant the Wards summary judgment on these issues.

Anticipating the Court's concern regarding a clear link between the arbitration award and Debtor's violation of securities laws or common law fraud, deceit or manipulation in connection with the purchase or sale of securities, the Wards argue that the Court should find the entire arbitration award excepted from discharge because it is apparent that the award was based, at least in part, on Debtor's consumer fraud violations. Two cases support this proposition.

First, in In re Jones, the plaintiff brought a FINRA arbitration claim, asserting violations of state securities laws, violations of equitable principles of trade and fair dealing, supervision violations, breach of fiduciary duty, negligent training and supervision, and participatory and vicarious liability. Jenkins v. Jones (In re Jones), 600 B.R. 561, 563 (Bankr. W.D. Tex. 2019). The FINRA arbitration panel issued an award styled much like the award in this case, finding liability against debtor/defendant Jones for compensatory damages, costs and attorney fees, but it did not articulate the basis for the awards. Id. at 563-64. The plaintiff initiated an adversary proceeding in the debtor's bankruptcy case, asserting the "FINRA Award" was excepted from discharge pursuant to section 523(a)(4) and (19). Id. at 564. The plaintiff then filed a motion for summary judgment, asserting the FINRA Award was nondischargeable as a matter of law because the arbitration panel determined the debtor violated securities laws and

11

breached his fiduciary duty. Id. at 568. The plaintiff argued the debtor was "estopped from arguing any additional facts or law that would preclude him from liability for FINRA violations." Id. The debtor resisted summary judgment, arguing that the FINRA Award did not include findings of specific violations of securities laws, fraud or breach of fiduciary duty. Id. at 567.

The bankruptcy court found that "the FINRA Panel, a non-bankruptcy tribunal, issued its FINRA Award determining that Defendant is liable for compensatory damages, costs, and attorneys' fees in relation to violations of securities laws in connection with the sale of a security." In re Jones, 600 B.R. at 569. Although it acknowledged the debtor's argument that "the FINRA Award does not specifically indicate whether it was awarding damages, attorneys' fees, and costs based on certain or all the FINRA Claims," it reasoned that the award arose at least "in part" in connection with the debtor's violation of securities laws. Id. Based on this conclusion and the fact that the award was memorialized in a state court judgment, it found the entire arbitration award was excepted from discharge under section 523(a)(19). Id. at 569-70.

The second case supporting the Wards' position that the entire arbitration award should be excepted from discharge is Ahuja v. Fleming (In re Fleming), 637 B.R. 390 (Bankr. D. Conn. 2021). Like In re Jones, the plaintiffs in In re Fleming filed a summary judgment motion arguing that that debt based on a FINRA arbitration award was excepted from discharge under section 523(a)(19). The debtor argued that the FINRA award did not include a specific reference to a violation of a federal or state securities law. In re Fleming, 637 B.R. at 394. The bankruptcy court focused on the language of

12

section 523(a)(19), which provides that a claim can be established if the debt is for either a violation of securities laws or for common law fraud, deceit or manipulation in connection with the purchase or sale of a security.  Id.  Because the plaintiff's claims included debtor's misrepresentations, failures to disclose and breaches of fiduciary duty, the court concluded that the FINRA award, which was confirmed by a state court, "established that, at the very least, the [debtor] made material misrepresentations and omissions regarding the securities he purchased and that he breached his fiduciary duty to the Plaintiffs in connection with the securities he purchased."  Id.  The court concluded that the debtor's actions rose to the level of common law fraud, deceit, or manipulation in connection with the purchase or sale of a security as set forth in section 523(a)(19) and granted summary judgment, ruling that the entire arbitration award was excepted from discharge.  Id. at 394, 396.

While these cases support the Wards' request for summary judgment, other cases in which courts considered a FINRA arbitration award in the context of a section 523(a)(19) claim inform the analysis in more nuanced ways.  In Schouten v. Jakubiak (In re Jakubiak), 591 B.R. 364, 376 (Bankr. E.D. Wis. 2018), the bankruptcy court found that neither the FINRA arbitration award nor the judgment confirming it unambiguously awarded damages against the debtor for a violation of securities law.  The FINRA award summarized the claims against the debtor, which included fraud and misrepresentation, unsuitability, breach of contract and implied covenant of good faith and fair dealing, breach of fiduciary duty, negligent supervision and respondeat superior.  Id. at 377-78.  Given the claims alleged, the factual underpinnings, and the ambiguous articulated basis for the award, the court concluded, "Ultimately, the context

13

and circumstances leave substantial doubt about whether the confirmed arbitration award is for a violation of federal or state securities law[.]" It opined:

> "Exceptions to discharge are to be narrowly construed, and because of the fresh start objectives of bankruptcy, doubt is to be resolved in the debtor's favor." Affordable Bail Bonds, Inc. v. Sandoval (In re Sandoval), 541 F.3d 997, 1001 (10th Cir. 2008) (internal quotation marks omitted). The doubt about the nature of the arbitration award is immutable: there are no disputed facts that might further clarify whether the award was for a securities-law violation. Both parties approach the interpretation of the judgment as a question of law. The immutable doubt about the basis for the award requires the court to grant summary judgment for [the debtor] on [the plaintiff's] § 523(a)(19) claim.

Id. at 380.

In Uren v. Schuholz (In re Schuholz), 2019 WL 11639553 (Bankr. S.D. Ohio 2019), the bankruptcy court concluded that a state court explicitly determined that the debtor violated state securities laws. Despite the state court's finding, the court denied summary judgment on the plaintiffs' claim under section 523(a)(19) because it was "unable to determine on the pleadings and the documents incorporated therein whether the judgment debt, or a portion thereof, is 'for' [the debtor's] securities laws violation and, thus, excepted from discharge under § 523(a)(19)." In re Schuholz, 2019 WL 11639553, at *9.

Similarly, in Gray v. Wenzel (In re Gray), 2011 WL 4503078 (B.A.P. 9th Cir. Jul.7, 2011), the bankruptcy appellate panel (BAP) addressed a bankruptcy court's grant of summary judgment related to a state court jury verdict based on breach of contract, breach of fiduciary duty, fraud and securities fraud. In its judgment entered after the jury verdict, the state court awarded compensatory damages totaling $207,477.60 for securities fraud and an additional $105,000 for breach of fiduciary duty. In re Gray, 2011 WL 4503078, at *1. The state court also awarded $23,768 in punitive damages,

14

$125,000 in attorney fees and $3,942.17 in costs but did not specify what sum of fees and costs was attributable to each particular violation.  Id.  The bankruptcy court deemed the entire debt nondischargeable, but it did not specify the grounds for granting summary judgment.  Id. at *2.  The BAP concluded that the plaintiffs established the elements necessary to give preclusive effect to the portion of the state court judgment awarding damages based on securities fraud.  Id. at *6.  Consequently, it affirmed the portion of the bankruptcy court order finding the debt arising from securities fraud was excepted from discharge under section 523(a)(19).  The BAP also found that the record was insufficient to conclude that the debtor's breach of fiduciary duty was the result of fraud, defalcation or other conduct sufficient to establish the elements under section 523(a)(4) or that debtor's breach of fiduciary duty involved a violation of securities laws sufficient to establish an exception to discharge under section 523(a)(19).  Id. at *9-10.  Lastly, the panel concluded the "record presented here does not make clear whether (or to what extent) the State Court Judgment's award of costs and attorneys' fees flowed from the nondischargeable conduct."  Id. at *11.  Accordingly, it reversed the portion of the bankruptcy court's summary judgment order excepting from discharge the part of the state court award based on breach of fiduciary duty, fees and costs.  Id. at *9-11.

       The Court finds the approach adopted by In re Jakubiak, In re Schuholz and In re Gray compelling.  Guided by these opinions, the proposition that exceptions to discharge are narrowly construed, and the requirement to grant all reasonable inferences in the nonmovant's favor under the summary judgment standard, the Court concludes that only the $100,000 attorney fee award is expressly related to Debtor's violation of fraud or securities law.  The arbitration panel cited no specific grounds for awarding

15

compensatory and punitive damages, fines, sanctions, costs and fees, and the Court cannot ascertain whether the arbitration panel assessed these monetary penalties for a violation of securities law or for fraud, deceit or manipulation in connection with the purchase of a security.  Because there is no obvious connection between the basis for these monetary penalties and the violations listed in section 523(a)(19) and because the Wards pursued claims before the arbitration panel that fall outside the scope of section 523(a)(19), the Wards did not meet their burden of showing that the monetary penalties (other than attorney fees) assessed in the award are excepted from discharge as a matter of law.  Their motion for partial summary judgment seeking an exception to discharge for the debt arising from these additional monetary awards is denied.

## IV.  CONCLUSION

The Wards' Motion for Partial Summary Judgment is GRANTED IN PART and DENIED IN PART.  Debtor's debt to the Wards in the sum of $100,000 related to attorney fees awarded by the arbitration panel is excepted from discharge under section 523(a)(19).  All other relief the Wards requested in their motion is denied without prejudice.

Dated this June 22, 2022.

*/s/ Shon Hastings*

SHON HASTINGS, JUDGE
U.S. BANKRUPTCY COURT